Gerlach *v.* School District of Little Beaver Twp. et al., Appellants.

Argued April 16, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*W. Walter Braham,* with him *William D. Cobau, J. Glenn Berry,* of *Braham, Cobau & Berry,* and *William J. Moffatt,* for appellants.

*John P. Lockhart,* of *Lockhart & Long,* for appellee.

OPINION BY CUNNINGHAM, J., October 2, 1935:

In April, 1930, plaintiff, a school teacher, entered into a written contract with the directors of the defendant school district, operating a joint high school, under which he was employed as a teacher in Enon Joint High School for the school year (nine months) of 1930-31 at a salary of $180 per month. This contract was drawn in accordance with the directions of Section 1205 of Article XII of the School Code of May 18, 1911, P. L. 309, as amended by the Act of May 7, 1929, P. L. 1576, 24 PS §1126. A material provision thereof reads: "And it is further agreed by the parties hereto that this contract shall continue in force year after year, ...... unless terminated by the teacher at the close of the school term by written resignation presented on or before the close of said school term, or by the Board of School Directors by official written notice presented to the teacher on or before the close of the school term." Under this contract plaintiff taught during the school years 1930-31 and 1931-32 and was paid the salary therein specified.

At the beginning of the school year 1932-33 plaintiff presented himself on the opening day, September 6, 1932, at the school building prepared to perform the services contemplated by the contract throughout that year but was informed by the president and secretary of the defendant board that his services would not be accepted because, as they asserted, his contract had been legally terminated as of the close of the previous school term.

Contending that the contract was in full force and

effect for the school year of 1932-33 and that, if he had not been prevented from so doing by the defendant board, he would have earned a salary of $180 per month for that year, or a total of $1,620, plaintiff brought this suit.

The defense interposed was that the contract had been legally terminated by the directors and an "official written notice" of its termination presented to plaintiff "before the close of the school term" of 1931-32. The trial judge instructed the jury that the plaintiff was entitled to recover, but submitted the question whether there should be any mitigation by reason of his failure to use reasonable diligence in securing other employment. The jury rendered a verdict in favor of the plaintiff for the full amount of his claim; defendants' motion for a new trial having been overruled, judgment was entered upon the verdict and this appeal by the directors of the defendant district followed. Reference is made in the opinion of the court below to a motion by defendants for judgment n. o. v., but neither the docket entries, nor the record as printed, indicate that defendants moved for judgment upon the whole record.

The controlling question involved upon this appeal is one of law and arises out of these facts. At a regular meeting of the board of directors of this Consolidated Joint High School, within two fourth class districts, held on March 24, 1932, the matter of the election of teachers for the ensuing school term was under consideration. At this meeting the board adopted a resolution to the effect that plaintiff's contract with it be terminated at the end of the current school term. The minute recording this action reads: "Next in order was election of teachers. Watt moved, Andrews seconded that Mr. Elmer Gerlach's contract with the Joint School Board be cancelled. Motion carried."

The minutes, themselves, disclose that there was an affirmative vote of at least a majority of the directors,

but, as recorded, do not show "how each member voted." They also show that of the ten directors, eight, Messrs. Gilmore, Fields, Knepp, Duncan, Watt, Duignan, Foster and Andrews were present when the meeting convened and that another, Walker, "came late."

Over plaintiff's objection, the secretary of the board, Mrs. Clara Andrews, was permitted to testify that she was present during the meeting; that Walker came in before the resolution was offered; and that each of the nine directors present voted in favor of the resolution.

Section 403 of Article IV of the School Code of 1911, supra, (24 PS §334) contains, inter alia, these provisions:

"The affirmative vote of a majority of all the members of the board of school directors in every school district in this Commonwealth, duly recorded, showing how each member voted, shall be required in order to take action on the following subjects:

\* \* \* \* \*

"Appointing or dismissing district superintendents, assistant district superintendents, associate superintendents, principals and teachers.

\* \* \* \* \*

"Dismissing a teacher after a hearing.

\* \* \* \* \*"

The Act of May 29, 1931, P. L. 243, 261, (24 PS, 1934, Cumulative, §1126) further amending Section 1205 of the School Code, supra, and effective upon approval, provides, inter alia, that the "official written notice" of termination shall be presented to the teacher "sixty days before the close of the school term." As plaintiff admitted the receipt by him not later than March 28, 1932,—a date more than sixty days before

the end of the term—of an official written notice, dated March 26, 1932, quoting the provision of his contract relating to the termination thereof and notifying him that it would "end at the close of the present school term, 3d day of June, 1932," we need not consider whether that amendment applies in this case.

There was also involved at the trial an offer of the minutes of a meeting on March 30, 1932, reading: "Vacancy—Duncan nominated John V. Gilmore to fill the vacancy caused by cancelling contract with Mr. Gerlach—Knepp moved nominations close, Fields seconded. Motion carried. Roll call." Then follow the names of eight directors with the word "yes" written after each name. The minute concludes, "Gilmore declared unanimously elected."

At a meeting of the board held on August 30, 1932, a successor to plaintiff having been elected for the school term of 1932-33, the president and secretary were instructed to inform plaintiff, if he presented himself on the first day of the term, that his services would not be accepted.

The record discloses that when the minutes of the meetings of March 24, and March 30, 1932, relative to the termination of the contract and the election of a successor, were offered in evidence in behalf of the defendant board, the offer was objected to by counsel for plaintiff upon the ground that the minutes of March 24th failed to show that the votes had been recorded as required by Section 403 of the code, supra.

This objection was sustained by the trial judge and the minutes of both meetings excluded from the evidence to be considered in the case. Appellants' first and second assignments of error are based upon this ruling.

Offers of the minutes of August 30, 1932, and of the written notice of termination were likewise rejected, except for the limited purpose of showing authority

of officers to act; this ruling is assigned as error in the fourth assignment.

The position of the learned trial judge was clearly stated in the following excerpt from his charge—complained of in the third assignment: "They [the joint board] undertook to terminate this contract; had a meeting, passed a resolution and they sent a notice in writing to the teacher here, but we are holding as a matter of law they didn't proceed according to the act of assembly. The legislature of this state has required that when a board of directors either hires a teacher or dismisses him, that they must all vote upon it, all members of the board, and their vote must be recorded in the minutes. Now, that wasn't done in this case, and we hold as a matter of law that this dismissal was not legal, that the notice sent out was not based upon any sufficient action, and that, therefore, this plaintiff has a right to recover, that the contract wasn't terminated, that the board didn't take the proper action, we are holding that as a matter of law, you have nothing to do with it, we are taking the responsibility of that because that is the law as we understand it to be, and you are supposed to take your law and must take your law from the court."

The only question submitted to the jury was whether the defendant district had shown that it was entitled to any mitigation of damages by reason of plaintiff's failure to make reasonable efforts to secure employment elsewhere.

For present purposes, it may be granted that the minutes must speak for themselves and may not be supplemented by the parol evidence of the secretary. It must also be conceded that the secretary did not record the votes in a manner which showed "how each member voted;" in other words, Section 403 of the School Code was not followed and obeyed by the sec-

retary when the board exercised its option to terminate its contract with plaintiff.

We agree with the court below that the pivotal question in this case is whether the termination by a school board of a teacher's contract at "the close of the school term" is one of the "subjects" to which Section 403 applies.

The court below held that the exercising by the board of the option to terminate, vested in it by the terms of the contract, was equivalent to "dismissing" a teacher, and that the action taken by the directors on March 24, 1932, was, therefore, taken upon one of the subjects to which Section 403 applies.

We are not convinced that it was the legislative intent that the requirements of Section 403 should apply to the exercise by a board of the power conferred upon it, under the amendments of 1929 and 1931 to Section 1205, supra, to terminate a teacher's contract at the end of an existing school term.

On the contrary, we think it apparent, when Sections 403, 1208 and 1205 (as amended) are read together, that the legislature made a distinction between "dismissing" a teacher and terminating a teaching contract at the end of a term.

Sections 403 and 1208 of the code have not been amended; each of them refers, inter alia, to "dismissing" teachers; and it may be assumed that the legislature used that word in its ordinary acceptation when applied to some employment—"to remove from": Webster's New International Dictionary.

Section 1208 provides that any principal or teacher "may be dismissed, at any time, by the board of school directors, on account of immorality, incompetency, intemperance, cruelty, negligence" etc. But before a teacher is dismissed under this section he must be given an opportunity to be heard, "after reasonable notice in

writing of the charges made against him." Cf. the recent case of Snyder v. Washington Twp. Sch. District, 117 Pa. Superior Ct. 448, 178 A. 312.

Opportunity to be heard must be afforded, but whether a hearing shall be conducted is optional with the teacher—hence the significance of the two above quoted references in Section 403 to dismissing teachers; the first relates to a dismissal for a cause not specified in Section 1208 or where a hearing has been waived, and the second refers specifically to a dismissal "after a hearing."

The original provision of the School Code with respect to contracts with teachers—Section 1205—merely provided that they should be in writing and executed in duplicate on behalf of the board and by the teacher. Provisions, prescribing their form and providing that they should "continue in force year after year," unless terminated by the teacher or the board in a designated manner, did not appear in the code until 1929. Obviously, the termination of teachers' contracts of employment, in a prescribed manner, at the end of any school term was not within the contemplation of the legislature when Section 403 was drafted and enacted and could not have been one of the "subjects" to which the section was intended to apply.

Again, the contract was not one for an indefinite period of employment. Under its terms, plaintiff was employed for the definite period of nine months, "subject to be *dismissed* and [the] contract terminated at any time whatever, for any of the causes specified in the 1208th Section" of the code. (Italics supplied) In the absence of the further agreement for renewal of the contract "year after year," (unless notice to the contrary be given by one party or the other), the relationship of employer and employee would have ended at the close of the school term in the spring of 1931. Clearly, such a termination of the relationship could not prop-

erly be considered a dismissal. It is difficult to see how a termination, at the option of the board, under the provisions of the "year after year" clause differs in essence from a termination of that kind.

The cases cited upon this branch of the case in behalf of plaintiff are of no assistance. All of them arose out of contracts for the *employment* of teachers—a subject expressly covered by Section 403.

This plaintiff seeks to recover for services he did not render and which he admits he knew for many months were not desired and would not be accepted. Concededly, the sole ground upon which he claims to recover is the highly technical one that the secretary of the school board failed to record upon the minutes how each of the nine members present voted upon the resolution to terminate his contract at the close of the current school year. He had expressly agreed that it might be terminated at the end of any school term. In order to sustain such a recovery he must show clearly and conclusively that he was *dismissed* within the intendment of Section 403 of the School Code.

For the reasons stated, we are of opinion that the section upon which he relies does not apply to the facts in this case. The first, third and fourth assignments are sustained. If the record as printed contained a motion for judgment in favor of the defendant district notwithstanding the verdict we would enter it here. In its absence, we can only direct that the motion for a new trial be reinstated and granted.

Judgment reversed with a venire.