## Mazaleski v. Hanover Township School Directors

*Donald O. Coughlin* and *David T. Davis, Jr.*, for petitioners.

*J. Gordon Mason*, for respondents.

McLEAN, P. J., May 26, 1936.—This case is before us upon a motion to continue a preliminary injunction, heretofore granted upon application in a taxpayers' bill, restraining the school directors of the School District of Hanover Township from filling vacancies in the teaching staff by the appointment of others as successors to 41 teachers who received, on April 17, 1936, notices of the termination of their teachers' contracts in the following form:

"April 16, 1936.

"This is to notify you that the contract, between you and the board of directors of the Hanover township school district, to teach school in the Hanover township schools will be terminated at the close of the school term, June 23, 1936.

"This is in accordance with paragraph three of your contract, which gives the board of school directors the right to terminate contracts by written notice.

"By order of the board of directors,

"Attest:   "Anthony F. Zuchoski.

. . . . . . . . . . . . . . . . . . . . . .

"Secretary of the Hanover
 Township School Board.
(Seal)."

The School District of Hanover Township is a district of the third class, and the directors, in the employment and dismissal of teachers, are governed by the following provisions of the School Code of May 18, 1911, P. L. 309, as amended:

"Section 26. That section one thousand two hundred and five of said act, which was last amended by section one of the act, approved the seventh day of May, one thousand nine hundred and twenty-nine (Pamphlet Laws, one thousand five hundred seventy-six), is hereby further amended to read as follows:

"Section 1205. In school districts of the second, third, and fourth class, all contracts with teachers shall be in writing, in duplicate, and shall be executed on behalf of the board of school directors by the president and secretary and signed by the teacher.

"After thirtieth day of June, one thousand nine hundred and twenty-nine, each board of school directors or board of public education in school districts of the second, third, and fourth class in this Commonwealth shall enter into contract, in writing, with all teachers, supervisors, supervising principals, and principals employed by them, and said contract shall contain the following:

"It is agreed by and between . . ., Teacher, and the Board of Directors of the school district of . . ., Pennsylvania, that said teacher shall, under the authority of the said board and its successors, and subject to the supervision and authority of the properly authorized superintendent of schools, teach in the said school district for a term . . . months, for an annual compensation of $ . . ., payable monthly or semimonthly during the school term, less the contribution required by law to be paid to the Teachers' Retirement Fund.

"This contract is subject to the provisions of the act, approved the eighteenth day of May, one thousand nine hundred and eleven (Pamphlet Laws, three hundred nine), entitled 'An act to establish a public school system in the Commonwealth of Pennsylvania, together with the provisions by which it shall be administered, and prescribing penalties for the violation thereof; providing revenue to establish and maintain the same, and the method of collecting such revenue; and repealing all laws, general, special or local, or any parts thereof, that are or may be inconsistent therewith,' and the amendments thereto, and to such regulations as the Board of School Directors of this district may impose consistent with the said act.

"And it is further agreed by the parties hereto that this contract shall continue in force year after year, with the right of the Board of Education, or the Board of School Directors to increase the compensation over the compensation herein stated, from time to time, as may be provided under the provisions and proper operation of the established salary schedule, if any, for the school district, or to change said salary subject to the provisions of law without invalidating any other provision of this contract, unless terminated by the teacher at the close of the school term by written resignation, presented sixty days before the close of said school term, or by the Board of School Directors by official written notice presented to

the teacher sixty days before the close of the school term":
Amendment of May 29, 1931, P. L. 243.

Act of May 18, 1911, P. L. 309, sec. 1208: "Any principal or teacher employed in any school district may be dismissed, at any time, by the board of school directors, on account of immorality, incompetency, intemperance, cruelty, negligence, or for the violation of any of the provisions of this act: Provided, That before any principal or teacher is dismissed he shall be given an opportunity to be heard, after reasonable notice in writing of the charges made against him."

At the hearing the following facts were agreed upon by the parties in a stipulation filed:

"1. That on April 8, 1935, contracts were entered into by and between the Hanover township school district and teachers appointed for the school year 1935-1936.

"2. That on July 11, 1935, by majority vote of the board, duly recorded, the last day of the school term for the school year 1935-1936 was fixed as June 15, 1936.

"3. That on April 16, 1936, by a majority vote of the board, the contracts of various teachers as designated in the bill of complaint were terminated with the exception of Margaret Tosh, whose contract was not terminated.

"4. That on April 17, 1936, written notice was presented upon each of the teachers whose contracts were terminated, by William C. Wint, district clerk.

"It is further agreed that no formal action was taken by the board or a majority thereof to change the last day of the school term, as fixed in the minutes of July 11, 1935."

The single question involved in these proceedings is the efficacy of the notice served upon the respective teachers on April 17, 1936, to terminate the then existing contracts.

The very salutary provisions of the School Code (sections 1205 and 1208) were enacted to provide a much needed protection to teachers in the public schools and

were clearly intended to constitute an assurance of tenure of employment, and served to extend and renew the teachers' contracts year after year unless terminated in strict accordance with its provisions.

The School Code provides in section 403:

"The affirmative vote of a majority of all the members of the board of school directors in every school district in this Commonwealth, duly recorded, showing how each member voted, shall be required in order to take action on the following subjects:

"Fixing length of school term . . . Appointing or dismissing district superintendents, assistant district superintendents . . . and teachers."

In accordance with this provision of the code, the school directors, on July 11, 1935, fixed the length of the school term for the year 1935-1936, and established June 15, 1936, as the concluding day of the school term. The record discloses no further action by the board in this regard.

While the decision of the Superior Court in Gerlach v. School District of Little Beaver Twp. et al., 119 Pa. Superior Ct. 520, holds that the termination of teachers' contracts, at the option of the board in accordance with section 1205 of the code, is not a dismissal of the teachers within the purview of sections 1208 and 403 of the code, nevertheless it in nowise relaxed the legal requirement imposed by section 1205, that the option of the board was to be exercised by the giving of official written notice presented to the teacher 60 days before the closing of the term, and it further held that the record of such action by the board is not required to show how each member voted thereon.

The provisions of section 1205, as embodied in the teachers' contracts in question, automatically extend the contracts year after year unless terminated by notice as therein required.

Admittedly the notices of termination of the teachers' contracts were presented to the teachers concerned on

April 17, 1936, 59 days before the close of the school term as then established by the board.

Because of the failure to give the full 60 days' notice of termination, we conclude that the teachers' contracts by their terms were automatically renewed for another year.

The contractual right of a teacher to an extension of the contract for another year attached upon the failure of the board to present the notice of termination 60 days before the close of the term as then fixed by the board. Any extension of the close of the term, made within 60 days of the closing date as previously fixed by the board, could not serve to extend the time within which notice of termination could be given without doing violence to the terms of the contract of employment.

It is urged by respondents that, if the date of the close of the school term for any reason is extended by the board, then the last day of the term as so extended is the date upon which the notice is to be computed. With this contention we do not disagree, provided the formal action of the board in fixing the length of the school term, as required by section 403, has been complied with at a date prior to the time of the giving of the notice of termination, and not less than 60 days before the date of closing as previously established. In the instant case, on July 11, 1935, the board, by formal resolution in accordance with section 403 of the code, fixed June 15, 1936, as the concluding day of the school term of 1935-1936. The mere inclusion in the notice given to each teacher of the words "that [your] contract will be terminated at the close of the school term June 23, 1936," cannot be accepted as a rescission of the previous action of the board fixing June 15, 1936, as the concluding day of the school term.

In considering the facts in this case we cannot avoid observing the very obvious significance of the action of the board in this wholesale termination of teachers' contracts.

The clear intent of the legislature in enacting section 1205, as amended, was to permit the board in the exercise of its discretion to terminate the contracts of teachers as therein provided; it is equally clear that it was intended that this power was not to be exercised arbitrarily and for a sinister purpose, that is, to permit the board to drive and dominate the teachers under a political whip because of fear of failure of reappointment.

In this connection we cannot withhold just condemnation of a policy, prevalent in some of the school districts of this county, under which school directors periodically terminate contracts of the entire teaching staff for the single purpose of compelling political allegiance from the teachers concerned.

We hold that the honest and intelligent administration of school affairs is a most vital factor in the preparation of the youth of our country for citizenship, and that the selection and retention of capable and suitable teachers is of supreme importance. Continuity of service of worthy teachers is the salvation of our educational system in the public schools, and an administrative policy that predicates the retention and service of a teacher upon any other reason than good moral conduct and professional ability, including aptitude for the work, is destructive of the morale of the teaching staff and deprives the pupil of the best efforts of the teacher.

If and when the individual school directors of some of the school districts of our county realize that the office of school director is one of honor and highest responsibility, and entitles the holder thereof to no perquisites, either in the selection of favorites as teachers or a political domination of their appointees, just so soon the quality and standards of the education offered by these districts will improve.

We are conscious that these comments have no part in the decision of this case but, gratuitous as they are, they are nonetheless timely and deserved.

We conclude that the preliminary injunction heretofore issued must be continued. Accordingly, it is ordered, directed and decreed that respondents be restrained and enjoined, and are hereby restrained and enjoined until final hearing, from entering into teachers' contracts with any persons as successors in the positions of teachers to those named in the fourth paragraph of the bill.